UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEPHANIE MCAFEE,

        Plaintiff,

                                      Case No. 1:23-cv-618

      v.

                                        JUDGE DOUGLAS R. COLE
TRANS UNION LLC,[1]                 Magistrate Judge Litkovitz

        Defendant.

## OPINION AND ORDER

Plaintiff Stephanie McAfee claims that Defendant Trans Union LLC violated two sections of the Fair Credit Reporting Act (FCRA)—15 U.S.C. §§ 1681e and 1681i—when it failed to follow reasonable procedures to ensure the accuracy of her Trans Union credit report, failed to conduct a reasonable reinvestigation as to a credit account that she says was fraudulently opened in her name, and then reinserted the account into her credit report without properly notifying her of the reinsertion. (*See generally* Am. Compl., Doc. 18). Trans Union has now moved for summary judgment on all claims. (Doc. 62).[2] For the reasons explained below, the Court **GRANTS** Trans Union's Motion for Summary Judgment (Doc. 62).

---

[1] Although Defendant appears as "Transunion" on the docket, the Court opts to follow Defendant's styling and refers to Defendant as "Trans Union."

[2] The Magistrate Judge flagged Trans Union's original Motion for Summary Judgment (Doc. 60), as noncompliant with a local rule that requires filed documents to be text searchable. (7/15/2026 Notice). Trans Union refiled its motion thereafter, (Doc. 62), and it is this latter filing that the Court addresses in this Opinion and Order. Because Trans Union's first Motion for Summary Judgment (Doc. 60) is still pending, the Court **DENIES** it as moot.

**BACKGROUND**

On July 10, 2023, Trans Union, a "consumer reporting agency" (CRA) as that term is defined in the FCRA, (Doc. 62-2, #1008 (citing 15 U.S.C. § 1681a(f))), received a letter from McAfee asserting that an American First Finance (AFF) account that appeared in McAfee's consumer report was fraudulent, (*id.* at #1015; Doc. 62-3, #1037–40).[3] Trans Union reviewed the letter, and, on July 11, 2023, sent McAfee a letter notifying her that it received her correspondence. (Doc. 62-2, #1015; Doc. 62-3, #1046). The letter provided information on Trans Union's dispute process and advised McAfee she could avail herself of that process if she wished to file a dispute. (Doc. 62-2, #1015; Doc. 62-3, #1046). McAfee responded by sending a second written letter, which claimed that the AFF account (along with three other accounts not at issue in this litigation) was "inaccurate because it was a fraudulent account." (Doc. 62-2, #1015; *see* Doc 62-3, #1048–53). That communication also contained a Federal Trade Commission (FTC) identity theft report dated August 11, 2023, identifying the AFF account as fraudulent. (Doc. 62-2, #1015; Doc 62-3, #1054–55).

---

[3] In recounting the case's factual background on a motion for summary judgment, the Court relies principally on Trans Union's stipulated undisputed facts, submitted as part of its briefing as directed by Standing Order I.F.2, available at https://perma.cc/S2YS-S7ZP. Occasionally, McAfee's responses to Trans Union's proposed facts admit the fact at issue, but then press an argument about the legal consequences of the fact once it is accepted as true. (*See, e.g.,* Doc. 64, #1214 ("Plaintiff admits [in part] that Trans Union deleted the AFF account after receiving the August 2023 dispute and FTC Identify Theft Report, classifying the account as presumed identity theft. Plaintiff notes, however, that this deletion confirms that her disputes and documentation were legitimate, and undermines Trans Union's later decision to reinsert the account without proper notice or reinvestigation.")). Where McAfee has responded in this manner, the Court treats the fact as admitted unless otherwise noted.

So Trans Union took action. It reviewed McAfee's dispute letter and the FTC report, compared it to McAfee's credit file, and "determined that the Account should be deleted as presumed identity fraud." (Doc. 62-2, #1015). And on August 17, 2023, Trans Union sent McAfee the results of its reinvestigation showing that the AFF account was "deleted from her Trans Union consumer credit file … within the period prescribed under FCRA § 1681i(a)(1)(A)." (*Id.* at #1016; Doc. 62-3, #1064–77). Trans Union also included a description of its consumer dispute reinvestigation procedures. (Doc. 62-2, #1016; Doc. 62-3, #1079).

But not long thereafter, on August 31, 2023, AFF "prepared and sent a Block Recission Request to Trans Union related to the Account," which certified the account's accuracy. (Doc. 62-2, #1016). So, on September 2, 2023, Trans Union reinserted the account into McAfee's consumer file and sent McAfee notice of the reinsertion.[4] (*Id.*; Doc. 62-3, #1083–92).

That prompted McAfee to send a third letter, which again asserted that the account was fraudulent. (Doc. 62-2, #1016; Doc 62-3, #1094–96). She also included "a screenshot of what appears to be a Trans Union consumer disclosure including the Account and an FTC Affidavit dated December 9, 2023 that identifies the Account as fraudulent." (Doc. 62-2, #1016; Doc. 62-3, #1097–1102). In response, Trans Union again reviewed McAfee's dispute letter, initiated a reinvestigation, and informed AFF that McAfee insisted that the account was fraudulent, providing all the

---

[4] McAfee disputes that Trans Union provided proper notice of the reinsertion, (Doc. 64-1, #1238–40), but as the Court explains below, she does not succeed in creating a genuine dispute of material fact on that front, *see* infra Law & Analysis, Part B.2.

documentation that McAfee had sent in support of her request. (Doc. 62-2, #1017; Doc. 62-3, #1104). AFF again notified Trans Union that McAfee "was wrong" and verified that the account belongs to McAfee. (Doc. 62-2, #1017). Trans Union sent McAfee the results of the reinvestigation on December 19, 2023, within the timeframe the FCRA provides. (*Id.*; Doc. 62-3, #1106–19).

McAfee claims that the allegedly fraudulent account's presence in her Trans Union consumer file has prevented her from obtaining credit. (Doc. 18, #88–89). She also asserts her Trans Union credit report has caused "credit limit decreases," as well as various and sundry forms of emotional distress. (*Id.* at #90–93). McAfee's Amended Complaint asserts two counts against Trans Union: (1) a violation of 15 U.S.C. § 1681e(b) for failing to follow reasonable procedures to ensure the maximum possible accuracy of McAfee's credit report, and (2) a violation of 15 U.S.C. § 1681i(a) for various reasons. (*Id.* at #93–96). First, McAfee claims Trans Union violated § 1681i(a)(1)(A) by failing to conduct a "reasonable reinvestigation to determine whether the disputed information [was] inaccurate." (*Id.* at #95). Second, McAfee claims that Trans Union violated § 1681i(a)(7) when it "failed to provide a written description of the procedures used to determine the accuracy and completeness of the disputed" information. (*Id.*). Third, McAfee claims that Trans Union violated § 1681i(a)(5) by failing to "have a procedure to prevent the reoccurrence of inaccurate or unverifiable information" and by failing to "delete the inaccurate information from" her credit report. (*Id.*). Fourth, McAfee claims that Trans Union violated § 1681i(a)(2) by failing to forward "all relevant information" to AFF. (*Id.*). In advancing those

4

theories, McAfee relies on the FCRA's causes of action for negligent, 15 U.S.C § 1681o, and willful, 15 U.S.C. § 1681n, violations of the statute. (*Id.* at #96).

Trans Union has now moved for summary judgment, asserting that McAfee's claims fail for various reasons. (Doc. 62). McAfee has responded, (Doc. 64), and Trans Union has replied, (Doc. 65). So the matter is ripe for review.

But McAfee has also filed a Motion for Leave to File Surreply (Doc. 68) in further opposition to Trans Union's summary-judgment motion. Following McAfee's Response (Doc. 64) to Trans Union's summary-judgment motion, Trans Union moved to exclude much of the evidence that McAfee submitted with her Response. (Doc. 66). And after Trans Union's Reply (Doc. 69) to McAfee's Response (Doc. 67) to the Motion to Exclude (Doc. 66), McAfee moved for leave to file yet another surreply. (Doc. 70). Trans Union has also moved for leave to file its "confidential and trade secret consumer dispute procedures" under seal. (Doc. 63, #1199). So the Court must also rule on these various other motions.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir. 1994). Once the movant meets its burden, the nonmoving party may not rest on its pleadings but rather must come forward with significant probative evidence to support its claim.

5

*Celotex,* 477 U.S. at 324; *Lansing Dairy,* 39 F.3d at 1347. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)).

This Court does not have the responsibility to sua sponte search the record for evidence creating a genuine issue of material fact. *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 404–06 (6th Cir. 1992). That burden instead falls upon the nonmoving party to "set forth specific facts" or evidence in dispute. *Anderson,* 477 U.S. at 250 (quotation omitted). If the nonmoving party fails to make the necessary showing for an element upon which it bears the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323.

In sum, in light of all the facts as to which Trans Union shows a lack of dispute, McAfee must in turn present some remaining "sufficient disagreement" which would necessitate submitting the matter to a jury. *See Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson,* 477 U.S. at 251–52). That said, in making that determination, the Court must view the evidence in the light most favorable to the nonmoving party—McAfee. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88 (1986); *Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all

6

reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## LAW AND ANALYSIS

**A.     The Court Does Not Consider Either of McAfee's Proposed Surreplies, the Evidence that Trans Union Seeks to File Under Seal, or McAfee's Exhibit D**.

Before the Court reaches the merits, it must resolve a preliminary issue—whether the Court will consider either of McAfee's two proposed surreplies, or evidence of Trans Union's dispute resolution procedures, which Trans Union seeks to file under seal. (*See* Docs. 63, 68, 70). The Court must also consider which portions of McAfee's evidence it will consider, as Trans Union has moved to exclude much of it. (Doc. 66). McAfee's motion for the first surreply contends that Trans Union's Reply (Doc. 65) to McAfee's opposition to Trans Union's summary-judgment motion introduces several new arguments that go beyond the summary-judgment motion. (Doc. 68, #1454–57). The second contends that Trans Union's Reply (Doc. 69) to McAfee's opposition to Trans Union's motion to exclude certain evidence from the record introduces new arguments that go beyond the original motion to exclude. (Doc. 70, #1494–96).

Although this Court's local rules generally do not permit parties to file surreply briefs, a party may request leave to do so upon a showing of good cause. S.D. Ohio Civ. R. 7.2(a)(2). As this Court has previously explained, generally, "good cause exists where the reply brief raises new grounds that were not included in the movant's initial motion." *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 593 F.

Supp. 3d 737, 744 (S.D. Ohio 2022) (citation modified). Good cause also exists "where a party seeks to clarify misstatements contained in the reply brief." *Id.* at 744–45 (citation modified).

The Court concludes that McAfee has not demonstrated good cause for either surreply. Start with the first. While McAfee identifies five purported bases for that surreply, (Doc. 68, #1454–56), only one—McAfee's claim that Trans Union mischaracterized the record by asserting that McAfee lacks the evidence necessary to prevail on certain elements of her claims—goes to any of the reasons that the Court considers dispositive in this case, *see* supra Law & Analysis, Part B. And Trans Union's Reply says nothing novel on that front. Trans Union has maintained, from the outset, that McAfee lacks the evidence necessary to show that McAfee's Trans Union credit report was inaccurate. (*See* Doc. 62-1, #993–96). Trans Union reiterates that point in its Reply. (*See* Doc. 65, #1415–17). In doing so, the Reply breaks no new ground. Because this is the only point that McAfee makes that could conceivably affect the outcome here in light of the analysis the Court adopts below, *see* supra Law & Analysis, Part B, the Court **DENIES** McAfee's Motion for Leave to File Surreply (Doc. 68).

Turn now to the second proposed surreply. As noted, Trans Union has moved to exclude much of McAfee's evidence. (Doc. 66). Only one piece of this evidence— McAfee's Exhibit D—has any bearing on the analysis that the Court adopts below, and the Court ultimately grants Trans Union's motion to exclude it. McAfee contends that Trans Union's Reply (Doc. 69) to McAfee's opposition to Trans Union's motion to

exclude "raises new arguments, factual assertions, and mischaracterizations of the record that were not included in its original motion to exclude." (Doc. 70, #1494). But McAfee identifies no *specific* arguments or facts that are new. Trans Union aptly observes it is "[McAfee's] pattern to wrongly claim that any argument made in a reply brief justifies [McAfee] obtaining the last word in a [surreply]." (Doc. 71, #1512). The Court agrees. McAfee again points to nothing new that warrants a surreply; she simply seeks another bite at the apple, notwithstanding that she had the opportunity to fully respond to Trans Union's motion to exclude in her response. So the Court **DENIES** McAfee's Motion for Leave to File Second Surreply (Doc. 70).

Next, the Court declines to grant Trans Union's motion to file its "confidential and trade secret consumer dispute procedures" under seal. (Doc. 63, #1199). Normally, deciding this motion would require the Court to consider whether Trans Union has succeeded in clearing the relatively high bar set by the Sixth Circuit's decision in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299 (6th Cir. 2016), and its progeny. But while evidence of Trans Union's procedures would be helpful if the Court needed to evaluate the reasonableness of those procedures, the Court concludes it need not reach that question in disposing of McAfee's claims. *See* infra Law & Analysis, Part B. Accordingly, the Court **DENIES** the Motion for Leave to File Under Seal (Doc. 63).

Finally, the Court does not consider McAfee's Exhibit D, which is among the evidence that Trans Union has moved to exclude. (*See* Doc. 66-1, #1435–36). Trans Union's motion actually seeks to exclude five pieces of evidence: (1) July 2024

9

correspondence to Trans Union, (*see* Doc. 64-1, #1289–98); (2) an undated online consumer disclosure from Trans Union Interactive, which, according to Trans Union, is a separate, third-party entity, (*see id.* at #1344–62); (3) credit denial letters from Avant Bank, Discover Bank, and LendingClub Bank, (*see id.* at #1364–66, 1368–71); (4) what the Court will refer to as Exhibit D, which is purported correspondence between McAfee and an AFF representative, along with an Automated Universal Dataform (AUD) that AFF allegedly sent to Trans Union to get the AFF account removed from McAfee's Trans Union credit report, (*see id.* at #1374–77); and (5) a self-produced "transcript" of a telephone conversation that McAfee had with a purported Trans Union representative identified only as "Edward," (*see id.* at #1379–80). Trans Union says that items (1)–(4) should be excluded because McAfee never identified or turned them over in discovery. (Doc. 66-1. #1438–39). And it says that item (5) amounts to inadmissible hearsay. (*Id.*).

While Trans Union seeks to exclude all five, the Court focuses its analysis on the fourth item in the above list (i.e., Exhibit D). That is because Exhibit D is the only piece of evidence from the list that could affect the outcome in light of the analysis the Court adopts below. *See* infra Law & Analysis, Part B.1. As to Exhibit D, in response to Trans Union's claim that she did not produce this document in discovery, McAfee asserts, without any evidentiary support, that she in fact did so. (*See* Doc. 67, #1448). Because the Court is not willing to simply take her word for it, that bare assertion is not enough to escape a discovery sanction.[5]

---

[5] To be clear, the Court is not simply taking Trans Union at its word either. Indeed, as the party seeking exclusion under Rule 37, Trans Union "bears the initial burden of

But while neither party flags the pertinent filing in their briefing, it appears that McAfee may have, in fact, disclosed the email exchange and AUD in late May or early June 2025. Both items appear in an attachment to a filing that McAfee styled a "Notice Regarding Bad Faith Settlement Conduct and Submission of Authenticated Evidence to the Record" (Doc. 59). (*See* Doc. 59-1, #647–50). That said, McAfee filed that notice on June 4, 2025, (*see* Doc. 59)—after the (already extended) discovery period closed on May 30, 2025, (Doc. 58, #620). True, McAfee's notice asserts that she sent Trans Union a settlement demand on May 20, 2025, which she says included the pertinent evidence. (Doc. 59, #623). But even crediting this assertion, this means that McAfee disclosed this evidence (at best) ten days before the close of discovery. (*See* Doc. 58, #620).

That is something of a problem for McAfee because she was under a duty to disclose this information in a timely fashion. In response to an interrogatory that required McAfee to identify "all communications" between herself and "any furnisher

demonstrating that [McAfee] violated Rule 26(a) or (e)." *Presidio, Inc. v. People Driven Tech., Inc.*, No. 2:21-cv-5779, 2023 WL 5162657, at *2 (S.D. Ohio Aug. 11, 2023) (citation omitted). But in the Court's view, Trans Union has said enough to carry its initial burden on that front. In its motion to exclude, Trans Union points to representations in McAfee's interrogatories that, under the Federal Rules of Civil Procedure, required supplementation once she became aware that her old responses were materially inaccurate. (Doc. 66-1, #1437). But, according to Trans Union, she never supplied such supplementation. (*Id.*). In the Court's view, that is sufficient to raise a legitimate question about whether McAfee in fact turned the evidence over because it is not clear what else Trans Union could file to support its claim of nondisclosure. After all, Trans Union's point is that the disclosure *did not occur*. Once Trans Union carried its initial burden, McAfee could have then come forward with specifics regarding the alleged supplementation. But she didn't. With respect Exhibit D, McAfee simply asserts that, at some unidentified point, she "showed Trans Union's counsel this … evidence." (Doc. 67, #1448). Because McAfee provides no evidentiary support for that claim, the Court looked to see whether it could find any support in the record. And that review led to the conclusion that McAfee disclosed this evidence ten days before the close of discovery at most, after McAfee was in possession of the evidence for nearly two months.

11

of information to Trans Union," McAfee essentially denied that she had any contact with AFF by curtly asserting that "Transunion already ha[d] [her] dispute." (Doc. 62-4, #1187). Having answered an "interrogatory," McAfee had a duty to "supplement or correct [her] disclosure or response" in a "timely manner" once she learned that her response was materially "incomplete or incorrect" unless Trans Union was otherwise made aware of the "additional or corrective information … during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "The duty to supplement under Rule 26(e) is designed to prevent a party from surprising his adversary in setting forth new facts not disclosed during discovery in sufficient time to adequately respond to them." *Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:17-cv-419, 2023 WL 2316205, at *4 (W.D. Ky. Mar. 1, 2023) (quotation omitted). As a result, "[d]isclosures made near or after the close of discovery are generally not 'timely' for purposes of Rule 26(e)." *Leonard v. Phillips*, No. 2:20-cv-613, 2023 U.S. Dist. LEXIS 237658, at *5 (S.D. Ohio Apr. 18, 2023) (citation omitted). So even assuming that McAfee disclosed the evidence on May 20 (i.e., ten days before the close of discovery), the disclosure was untimely.

Under Rule 37(c)(1), a failure to supplement an interrogatory response precludes a party from relying on the undisclosed evidence to support a motion "unless the failure was substantially justified or is harmless." And, as noted, a failure to supplement does not implicate Rule 26 if the information at issue was "otherwise [] made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). So the question that remains for the Court is whether either of

12

these exceptions save the email exchange and AUD from exclusion. *See Clark*, 2023 WL 2316205, at *4.

As an initial matter, McAfee has not demonstrated that the failure to supplement was justified or harmless. The Sixth Circuit has identified five factors for assessing whether a failure to disclose information was substantially justified or harmless, *see Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citations omitted), and the "potentially sanctioned party"—here, McAfee—"bears the burden of proving harmlessness or substantial justification," *EQT Prod. Co. v. Phillips*, 767 F. App'x 626, 634 (6th Cir. 2019) (citation omitted). But McAfee does not engage with the relevant factors at all or otherwise explain why her failure to supplement was substantially justified or harmless. That is sufficient for the Court to conclude that she has not carried her burden. *Leonard*, 2023 U.S. Dist. LEXIS 237658, at *6–7.

Nor has she shown that Trans Union was otherwise timely aware of the exchange or the AUD. McAfee points to nothing (other than her own unsupported assertion) that she timely disclosed this evidence to Trans Union.[6] Further, the dates on the email exchange itself suggest that McAfee sat on the information for some time before turning it over. The relevant emails were sent on March 31, 2025, and April 1, 2025—approximately two months before McAfee disclosed the exchange in late May

---

[6] Although she does not cite it, McAfee did file a "Notice Regarding Discovery Matters" in February 2025, which contains an *earlier* exchange with purported AFF representatives. (*See* Doc. 52). In that exchange, McAfee requests confirmation that AFF "reached out to Transunion and any and all other consumer reporting agencies to delete the American First Finance item of information." (Doc. 52, #347). In response, a person identified as "Sharry Krutsch" replies, "Yes, the tradeline deletion has been submitted." (*Id.* at #348). The Court considers the limited significance of this exchange below. *See* infra Law & Analysis, Part B.1.

or early June. That's significantly longer than the 30 days that courts often recognize as timely. *See, e.g.*, *Lasko v. Mobile Hyperbaric Ctrs., LLC*, No. 1:19-cv-542, 2021 WL 733768, at \*6 (N.D. Ohio Feb. 25, 2021). So the Court **GRANTS** Trans Union's Motion to Exclude (Doc. 66) as to Exhibit D. And because Exhibit D is the only piece of evidence that could affect the outcome in light of the analysis the Court adopts below, it **DENIES AS MOOT** the rest of Trans Union's motion.

## B. Trans Union is Entitled to Summary Judgment on McAfee's FCRA Claims.

15 U.S.C. § 1681e(b)—the statutory basis for McAfee's first count—requires CRAs to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Section 1681i(a)—the statutory basis for McAfee's second count—requires CRAs to "conduct a reasonable reinvestigation" to determine the accuracy of any information that a customer disputes. 15 U.S.C. § 1681i(a)(1)(A). Once a CRA receives notice of a dispute, the CRA must "provide notification" of the dispute to the furnisher of the information, and that notification must "include all relevant information regarding the dispute that the agency has received from the consumer or reseller." *Id.* § 1681i(a)(2)(A). If, after reinvestigation, "an item of the information is found to be inaccurate or incomplete or cannot be verified," the CRA must (1) promptly delete or modify the inaccurate information, and (2) "promptly notify the furnisher of that information that the information has been modified or deleted." *Id.* § 1681i(a)(5)(A). If a CRA deletes information from a consumer credit report after reinvestigation, the CRA may reinsert it only if the furnisher of the information "certifies that the

14

information is complete and accurate." *Id.* § 1681i(a)(5)(B)(i). CRAs have an obligation to "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted." *Id.* § 1681i(a)(5)(C). Importantly, though, the obligation extends only to information "other than [that] reinserted" after an information furnisher certifies the accuracy of any reinserted information. *Id.*; *see id.* § 1681i(a)(5)(B)(i).

1. **Summary Judgment is Appropriate on McAfee's § 1681e(b) and § 1681i(a)(1)(A) Claims Because She Has Not Produced Sufficient Evidence of an Inaccuracy on Her Trans Union Credit Report.**

A threshold requirement for a § 1681e(b) claim is that "the defendant reported inaccurate information about the plaintiff." *Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 941 (6th Cir. 2020) (citation modified). So too is it a threshold requirement for § 1681i(a)(1)(A) claims. *Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516, at *3 (W.D. Tenn. Aug. 8, 2019) ("To state a claim for willful or negligent violation of [§ 1681i(a)(1)(A)], Plaintiff must assert an inaccuracy in Trans Union's reporting."). The Sixth Circuit has defined "inaccuracy" to include information that is "patently incorrect" or "misleading in such a way and to such an extent that it could have been expected to have an adverse effect on the consumer." *Twumasi-Ankrah*, 954 F.3d at 942.

Trans Union contends that McAfee cannot create a genuine dispute of material fact as to this issue. (Doc. 62-1, #994–96; Doc. 65, #1415–17). The Court agrees. In support of her view that she can carry the day on this element, McAfee points, (*see* Doc. 64-1, #1235–38), to (1) her affidavit asserting that the AFF account is

15

fraudulent, (*see id.* at #1255–56), (2) the dispute letters that she sent to Trans Union, (*see id.* at #1264–69; *id.* at #1273–78; *id.* at #1281–84), and (3) the FTC identity theft report she submitted in connection with the AFF account, (*id.* at #1279–80). But none of these items, considered separately or taken together, suffice to create a genuine dispute of material fact as to whether the AFF account was, in fact, fraudulent. McAfee's affidavit simply *declares* that the account is fraudulent. (*Id.* at #1256). And the dispute letters and the FTC report merely make that point at greater length, but once again all based on McAfee's say so. (*See id.* at #1264–69; *id.* at #1273–84). As noted, the record also contains an email exchange between McAfee and purported AFF representatives, which McAfee presents as an indication that AFF itself later asked Trans Union to delete the AFF account from her credit report (albeit not something she attached to her summary judgment briefing). *See* supra note 5. But even assuming McAfee's characterization of the email is correct, that alone does not show that AFF agreed that the original report was inaccurate. Indeed, it is not at all clear why AFF asked to have the information removed. And so far as the Court can tell, McAfee never sought from AFF additional information about how or when the account was created, any email or physical addresses associated with the account, or any communications or account activity that occurred on the account.[7] So the question becomes whether her affidavit, dispute letters, and FTC report are enough evidence to take her beyond summary judgment.

---

[7] McAfee asserts that she "sued AFF," which supposedly led to AFF asking Trans Union to remove the account from McAfee's credit report. (Doc. 64-1, #1232). But McAfee provides no details about this lawsuit, and the Court was unable to independently verify that such a suit was ever filed.

While case law on the quantum of proof for showing inaccuracy under the FCRA is admittedly sparse, the approach seems to be something along the following: where a CRA has accurately reported the information it received from a creditor, but the plaintiff is claiming that the credit report is nonetheless inaccurate because the creditor provided inaccurate information, the plaintiff must provide actual evidence of that inaccuracy, rather than merely offering "unsupported assertions" that the creditor's report was inaccurate. *Walton v. BMO Harris Bank N.A.*, 761 F. App'x 589, 591 (7th Cir. 2019) (citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010)) ("Here, Equifax reported only the information BMO Harris provided, and Walton offers no evidence showing that BMO Harris's account of her payment history or the amounts owed is inaccurate. Her unsupported assertions are not sufficient to contradict the evidence in the record."); *see also Gomez v. EOS CCA*, No. cv-18-2740, 2020 WL 3271749, at *3 (D. Ariz. June 17, 2020) (collecting cases) ("A consumer's personal opinion or speculation is insufficient to support a claim of inaccuracy under the FCRA."). In other words, information from the furnisher is itself a form of evidence. Against that backdrop, McAfee's "unsupported assertions" that AFF's reported information was inaccurate will not suffice to create a genuine dispute about accuracy. *Walton*, 761 F. App'x at 591 (citation omitted).

McAfee's dispute letters and FTC report do not change this conclusion. "These records of [McAfee's] disputes (and the fact that [Trans Union] initiated investigations in response to them) are merely evidence that [McAfee] made

17

*allegations* of inaccuracies," not evidence of inaccuracy in fact. *Cohen v. Equifax Info. Servs., LLC*, 827 F. App'x 14, 16 (2d Cir. 2020).

All of this is also consistent with the Sixth Circuit's summary-judgment case law. As it explained in *Alexander v. CareSource*, "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." 576 F.3d 551, 560 (6th Cir. 2009) (first citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004); and then citing *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–99 (6th Cir. 1999)). To be clear, the Court is not suggesting that a CRA can, as a general matter, defend an FCRA claim on the ground that it was merely parroting information it received from furnishers. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) (noting that, upon reinvestigation of an alleged inaccuracy, CRAs may not "merely parrot[] information received from other sources"). But that point goes to the *reasonableness* of a CRAs reinvestigation procedures, not the threshold question of whether the information was, in fact, inaccurate. In other words, *if* the information were inaccurate, then Trans Union could be liable, notwithstanding that it is merely "parroting" information it received from another. But the question here is what evidence McAfee has that the information was, in fact, inaccurate. And on that front, she has an obligation to bring forward something more than her "conclusory statements" that she never opened an account to show that Trans Union's report was wrong.

Perhaps sensing that her evidence is lacking on this point, McAfee improperly attempts to shift the burden to Trans Union by claiming that Trans Union seeks to

18

rely on an "unsupported and meritless accuracy defense." (Doc. 64-1, #1236). But Trans Union does no such thing. "[T]he burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 n.9 (11th Cir. 1991), *superseded by statute on other grounds as recognized in Santos v. Healthcare Revenue Recovery Grp., LLC*, 85 F.4th 1351, 1362 (11th Cir. 2023). So McAfee's assertion that Trans Union "has submitted no admissible evidence establishing that the account was accurate" misses the mark. (Doc. 64-1, #1236). Moreover, McAfee had every opportunity to procure the evidence she needed to prevail on this element (if the information is in fact inaccurate); she just failed to do so. Indeed, at her deposition, McAfee conceded that she made no effort to contact AFF regarding the allegedly fraudulent account. (Doc. 62-4, #1139). And though it appears that she had contact with AFF after she sat for her deposition, evidence of that contact is either inadmissible or insufficient to raise a genuine fact issue that is sufficient to reach trial for the reasons explained above.

In sum, McAfee cannot create a genuine dispute of material fact as to whether her Trans Union credit report contained inaccurate information. Because inaccuracy is a necessary element of both her § 1681e(b) and § 1681i(a)(1)(A) claims, summary judgment is proper on both.

**2. McAfee's § 1681i(a)(5) Reinsertion Claim Fails Because AFF Certified the Account's Accuracy, and Because Trans Union Provided Proper Notice of the Reinsertion.**

Now consider McAfee's § 1681i(a)(5) theory. Under that portion of the statute, a CRA must "promptly delete" inaccurate information and "promptly notify" the furnisher of such information "after any reinvestigation." 15 U.S.C. § 1681i(a)(5)(A)(i)–(ii). Once the CRA provides the furnisher with notice of the removal, the CRA may reinsert the information if the furnisher "certifies that the information is complete and accurate." *Id.* § 1681i(a)(5)(B)(i). The CRA must then "notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion." *Id.* § 1681i(a)(5)(B)(ii). Further, CRAs must "maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted [based on a certification from a furnisher])." *Id.* § 1681i(a)(5)(C). McAfee says that Trans Union failed to abide by these requirements, (Doc. 64-1, #1238–40; Doc. 18, #95), and Trans Union says the opposite, (Doc. 62-1, #1001–02). Again, the Court agrees with Trans Union.

As already discussed, both parties agree that Trans Union initially removed the AFF account as an instance of presumed identity fraud after Trans Union received McAfee's dispute. And Trans Union then notified AFF of the removal, as the FCRA requires. But AFF then certified that the account belonged to McAfee. All of this is consistent with the process the statute contemplates. And § 1681i(a)(5)(C)'s "reasonable procedures" requirement has no bearing here because that provision

20

applies only if the information at issue is *not* reinserted pursuant to a furnisher's certification. So Trans Union is in the clear on that front.

The parties' briefing focuses on whether Trans Union provided proper notice of the reinsertion. In support of its position, Trans Union cites a copy of the reinsertion notice, as well as a declaration from a Trans Union employee that the notice was mailed to McAfee. (*See* Doc. 62-3, #1030, 1087). McAfee again comes forward with no contrary evidence except for her own unsupported assertion that she did not receive the notice. (Doc. 64-1, #1256–58). But McAfee's "assertion" that she "did not receive the notification mailed by [Trans Union]" is a "mere scintilla of evidence" that does not suffice to create a genuine dispute of material fact. *Sloane v. Experian Info. Sols., Inc.*, No. 2:17-cv-1117, 2018 WL 6566539, at *3 (D. Nev. Sep. 25, 2018). Importantly, this case is different from *McAfee v. Early Warning Services., LLC*, No. 1:25-cv-578, 2026 WL 693172 (S.D. Ohio Mar. 12, 2026), another case McAfee brought under a different FCRA provision that is currently pending before this Court. There, the Court concluded that, in light of the early stage of the proceedings, McAfee was entitled to limited discovery on the narrow question of whether the defendant in fact mailed McAfee's consumer file to her. *Id.* at *8. Here, by contrast, the dispute has already gone through discovery. But despite that, McAfee points to no evidence, other than her own unsupported assertions, that contradicts Trans Union's testimony and documentary evidence. While her assertions might suffice to give rise to a reasonable inference that she may be able to prove a claim (thus allowing her claim to survive a challenge under Rule 12(b)(6)), they do not, at this stage in these proceedings, suffice

21

to create a *genuine* dispute of fact. So summary judgment is appropriate on McAfee's § 1681i(a)(5) claim as well.

> **3.    The Remaining FCRA Theories Raised in McAfee's Complaint Fail.**

In addition to the FCRA theories addressed above, McAfee's Amended Complaint mentions[8] two other FCRA provisions: (1) 15 U.S.C. § 1681i(a)(2), which in pertinent part requires CRAs to provide furnishers of information with "notice" once the CRA receives a dispute from a consumer, and to include "all relevant information" with that notice; and (2) 15 U.S.C. § 1681i(a)(7), which requires CRAs to provide a description of the CRA's procedures for determining "the accuracy and completeness" of a consumer's information, "including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher." (Doc. 18, #95).

Trans Union claims that McAfee "expressly limited her claims against Trans Union to Trans Union's reporting, reinvestigation[,] and reinsertion of the Account." (Doc, 62-1, #994). But in the Court's view, that is a rather tendentious characterization of what McAfee actually said. (*See* Doc. 62-4, #1135). And Trans Union cites no authority for the proposition that a party can waive legal theories through deposition testimony. That said, McAfee does not raise her § 1681i(a)(2) or

---

[8] The Court uses this term deliberately because the Complaint does not plead any *facts* to support these theories; it just mentions them in connection with McAfee's second FCRA count. (*See* Doc. 18, #95).

22

§ 1681i(a)(7) theories in response to Trans Union's assertion, and that may constitute forfeiture.

Ultimately, though, the Court opts to briefly consider the theories, which leads to the Court rejecting them on the merits. From what the Court can tell, there is no evidence in the record that Trans Union failed to provide AFF with the notice and information that § 1681i(a)(2) requires, and McAfee has identified none. So too for the § 1681i(a)(7) theory. To the extent the record contains evidence on this point, it suggests that McAfee received the relevant information. For example, Trans Union appears to have disclosed it in response to McAfee's second missive to Trans Union. (*See* Doc. 62-3, #1068, 1079). Thus, to the extent that McAfee's Amended Complaint raises § 1681i(a)(2) or § 1681i(a)(7) as standalone FCRA violations, the Court rejects both.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** Trans Union's Motion for Summary Judgment (Doc. 62), **GRANTS IN PART** Trans Union's Motion to Exclude (Doc. 66), and **DENIES** all other outstanding motions. Consistent with that, the Court **DIRECTS** the Clerk to enter judgment for the Defendant and to **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

March 30, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

23